## HOOVER STEEL BALL COMPANY

*v.*

## SCHAFER BALL BEARING COMPANY.

[Decided January 27th, 1919.]

1. Payments made at a time when a corporation is insolvent and has suspended its business in the sense that it has ceased to meet its maturing pecuniary obligations as they accrue, to a creditor, with notice of the insolvency, whose debt arose by reason of an advance by him to the corporation at a time when it was insolvent to his knowledge, are voidable under section 64 of the Corporation act and may be recovered by a receiver.

2. A creditor who has advanced money to a corporation insolvent to his knowledge and has taken a pledge of all of its assets, the advances not being made in pursuance of any plan of rehabilitation, repayment being provided for in monthly installments in amounts which the creditor must have known the corporation could not pay except at the expense of new creditors unless extraordinary circumstances intervened, is charged with knowledge of insolvency at the time of payments which in fact existed.

On bill, &c.   On appeal of administrator of Daniel H. Tolman from determination of the receiver on claim.

*Messrs. Bilder & Bilder* (*Mr. David H. Bilder*), for the receiver.

*Mr. Benjamin F. Jones* and *Mr. Porter* (of the New York bar), for the claimant.

LANE, V. C.

The Tolman estate is the holder of notes aggregating $5,000 made by defendant corporation on or about October 27th, 1917, and secured by a chattel mortgage. The total amount of the notes originally was $6,000. They were payable $500 each month. The first two notes were paid in due course. In prior conclusions in this case I found that the chattel mortgage was given at a time when the corporation was insolvent and had suspended its ordinary business in the sense of suspension of payment of its pecuniary obligations as they matured to the knowledge of Tolman, and I held void a pledge of steel made at the same time to secure another debt. The Tolman estate admitted the invalidity of the chattel mortgage for want of proper record. It filed its claim with the receiver for the balance of $5,000 due on the notes, which claim the receiver rejected upon the ground that the payments of the two notes were in violation of the sixty-fourth section of the Corporation act (*2 Comp. Stat. p. 1638*), for the reason that at the time they were made the corporation was insolvent and had suspended business to the knowledge of Tolman. I set forth the facts with considerable detail in my prior conclusions, which may be considered with these. I found that the company at the time of the original transaction was insolvent in the sense that there was a general inability to meet pecuniary obligations as they matured by means of available assets or an honest use of credit, and that it had suspended its business in the sense that it had ceased payments of the pecuniary obligations as they matured and was not about to resume payments and that no plan was proposed by which the company was to be put upon its feet, nor was it contemplated that the

moneys raised should be used for the purpose of putting the corporation in the position of paying its maturing obligations. The most that can be said is that the officers of the company hoped that the money advanced by Tolman might enable them to complete their experiments so that they might have something which would put them in a position to negotiate with creditors. Tolman was, in fact, advancing capital at usurious rates secured by a pledge of all the company's available assets. The company was not in need of funds to tide it over a temporary embarrassment. It was in need of working capital. In consideration of the advance of some $9,000, the corporation stripped itself of its available means of raising money. The notes and chattel mortgage were for short terms and not given in pursuance of any plan of rehabilitation.

The law is settled that payments made to creditors resulting in preferences when a corporation is insolvent, to the knowledge of the creditor, may be recovered. *Miller* v. *Audonried, 67 N. J. Eq. 252; affirmed, 68 N. J. Eq. 658; Jessup, Receiver,* v. *Thomason, 68 N. J. Eq. 443.* I do not mean to intimate that payments may not be made where the suspension of business has been so complete, or the payments are made so out of the ordinary course of business as that they may be recovered, even if creditors have not actual knowledge of insolvency. I conclude that at the time the payments were made Tolman had notice of the insolvency, and of the suspension of business in the sense that I have held that the company had suspended business. Both payments were made within sixty days after the giving of the chattel mortgage which, with the pledge held by Tolman, covered all of the property of the corporation. As I have stated, the money was not advanced pursuant to any plan of rehabilitation. It was an advance of capital rather than a loan of money to tide over a temporary embarrassment. Tolman's knowledge of the situation at the time the notes were given was such that he was bound to know that the company never could succeed and resume its business unless something extraordinary happened. The company was not manufacturing and was not in receipt of an income. He knew, or was charged with knowing, that within the short space of sixty days it could not commence manufactur-

ing with profit. He must be assumed to know that the payments were at the expense of new creditors of the company. The money was used to prefer certain creditors. He in turn was preferred at the expense of others. Nothing was brought to his attention which would warrant him in assuming that there had been the slightest change in the situation. Under the circumstances, it was his duty to have ascertained the condition of the company at the time of the payments.

I conclude that Tolman took the two payments of $500 charged with notice of insolvency and that the payments created voidable preferences.

Inasmuch as the dividend on the Tolman general claim will be in excess of $1,000, there is no necessity that any actual repayments be made.

The receiver may allow the claim of the notes secured by the chattel mortgage as a general claim for $6,000. He may figure the dividend for the general creditors as if he had $1,000 more than he has in his possession, and may deduct that $1,000 from the dividend payable to Tolman's estate.

No costs to either party.

Settle order on one day's notice.