## DRAKE v. POPE.

### Opinion delivered April 7, 1906.

1. BROKER FOR UNDISCLOSED PRINCIPAL—LIABILITY.—While a broker will not be held liable upon a contract for a disclosed principal, or where the third party knew or ought to have known that he was acting for another, yet, if he does not disclose his principal nor the fact that he is acting for another, then he is liable, although in fact he acted as broker, in which case the third party may elect to hold him instead of his after-disclosed principal. (Page 329.)

2. SAME—LIABILITY—INSTRUCTION.—An instruction that if a broker caused another to fill an order for merchandise made to him it released him, and that if the buyer paid the draft of the other that released the broker and substituted the other, was properly refused, as, if the order was a personal one, and not one to be filled according to broker's custom, it was within the broker's right to have another fill it for him, and it was immaterial to whom the draft was payable. (Page 330.)

3. INSTRUCTIONS—FAILURE TO ASK.—Appellant can not complain that the case was tried without instructions embodying his theory of the case if he failed to ask them. (Page 331.)

Appeal from Howard Circuit Court; *James S. Steel,* Judge; affirmed.

*W. C. Rodgers,* for appellant.

1. Appellant acted only as a broker, did not sell the feed-stuff himself, had no part in filling the order, had no interest in

<sup>a</sup> the company that filled the order, and is not liable. The commission company shipped the corn to appellee, direct, with bill of lading attached. The mere sending of an order did not constitute a contract.

2. The order sent to appellant was merely an offer to buy. He could not fill the order, did not accept it, but requested the commission company to do so. They accepted and filled the order, and were paid by appellee. The court's instruction making appellant liable if he caused the corn to be shipped was too broad, besides being in direct conflict with the instruction given to the effect that appellee could not recover unless the evidence showed that it was bought from appellee, and the order therefor filled by him. Conflicting instructions are no guide to juries and should never be given. 74 Ark. 437.

*Feazel & Bishop,* for appellee.

1. Appellant did not disclose to appellee that he was acting as a broker in the transaction. Under the facts both appellant and the commission company are liable. An agent can make a valid contract with a third party in his own name without disclosing his principal, which is binding upon the agent in his individual capacity, and either party may enforce the contract against the other independently of the undisclosed principal. 76 Ark. 558.; 114 N. Y. 535; 43 Am. Dec. 681 and note; 57 Am. St. 536. Having made such a contract, he can not relieve himself by showing that he was acting simply as an agent or broker for a principal, whether the latter was disclosed or not. 84 Wis. 52; 42 Wis. 565. If appellant would excuse himself on the ground of agency, he must show that he disclosed his principal at the time of the contract. 60 Ark. 68.

2. The commission company, in shipping the corn at appellant's request, did so as *his* agent. Having selected it to carry out the contract, he became responsible for its failure to comply with the terms of the contract.

HILL, C. J. O. T. Pope ordered of A. F. Drake a carload of feedstuff, containing corn of a certain grade, among other stuff. The car arrived with bill of lading attached to draft in favor of Cunningham Commission Company for the price of the carload. Pope paid the draft, and received the car, and dis-

covered the corn was not in compliance with the order, and returned it. This suit is to recover the price of the corn, and the only question litigated was whether Drake or the Cunningham Commission Company was the responsible party.

The court instructed the jury that if Pope ordered the corn from Drake at a guarantied price and quality, and Drake shipped or caused to be shipped the corn which was of an inferior quality to that ordered, and Pope was compelled to pay for the corn before he had an opportunity to inspect it, then he was entitled to recover, without regard to whether said corn was shipped by Drake or some other person from whom said Drake procured it to be shipped. This instruction was correct, and in consonance with the facts as testified to by Pope. It could make no difference whether Drake personally furnished the corn or caused another to furnish it for him in compliance with his order from Pope.

The evidence on Drake's behalf tended to prove that he was a mere broker, and had not the corn for sale, and acted as broker in procuring it for Pope, and had no interest beyond his brokerage, and that these facts were known to Pope. Not only does his testimony tend to prove this to have been the status, but there are statements in Pope's testimony corroborative of this theory, and the draft in favor of the Cunningham Commission Company, attached to the bill of lading, was a circumstance of more or less probative force on the same side of the controversy. Thus an issue of fact was squarely presented. The instruction referred to and instructions 1, 4 and 5 given at instance of appellant (all of which will be set out by the Reporter)* correctly presented the requisite facts to be found for Pope to recover, and Pope's evidence sustained this view, and the jury accepted it as true. On

*Instructions 1, 4 and 5, given by the court, were as follows:

"1. The jury are instructed that the plaintiff cannot recover anything against the defendant, A. F. Drake, for any damages to the corn in controversy, unless the evidence shows that the same was bought from A. F. Drake, and the order therefor filled by him.

"4. The plaintiff cannot recover anything from the defendant, A. F. Drake, unless he bought the corn and feed stuff in controversy from the said Drake.

"5. The burden of proof is on the plaintiff to show by a preponderance of the testimony that he bought the corn in controversy from the defendant, A. F. Drake." (Reporter.)

the other hand, Drake was entitled to have submitted to the jury his theory of a sale as broker, and he had ample evidence to have gone to the jury and to have sustained a verdict, if it had been accredited by the jury. It is well established that a broker can not be held personally liable to the third party upon a contract for a disclosed principal; and if the third party knew, or had suffi-cient knowledge to create an inference, that the broker was act-ing for another, then the broker is not liable. But if he does not disclose his principal nor the fact that he is acting as a broker, but deals personally, then he is liable, although in fact he acted as broker, and his principal may be held after disclosure, but this does not prevent his personal liability if the third party elects to hold him instead of his after-disclosed principal. 2 Clark & Skyles on Agency, § 786; *Shelby* v. *Burrow,* 76 Ark. 558.

No instructions were given presenting the appellant's con-tention, and the case seems to have been tried solely on whether appellee's contention was the truth, and, the jury having found that it was true, the question before the court is limited to whether the court erred in the instructions given or in refusing those offered by appellant. As before stated, the court finds those given to be correct. The Reporter will set out the two refused instructions, Nos. 2 and 3.† They assume that if Drake caused another to fulfill the order which was made to him, it released him; and if Pope paid the draft of the other party (Cun-ningham Commission Company), that of itself released Drake and substituted the commission company as the contracting party. Such is not the case. If in fact the order was a personal one, and not one to be filled according to broker's custom, then it was perfectly within Drake's right to have another fill it for

---

Refused instructions Nos. 2 and 3 were as follows:

"2. If the jury find from the evidence, that the plaintiff, O. T. Pope, ordered the corn in controversy, from A. F. Drake, and that A. F. Drake did not have the corn, etc., ordered, and could not fill the order for this reason, but sent the order to the Cunningham Commission Co., of Little Rock, to be filled by them and shipped to the plaintiff, O. T. Pope, you should find for the defendant, A. F. Drake.

"3. If the jury find from the evidence that the corn in controversy was shipped by the Cunningham Commission Co., of Little Rock, Ark., to O. T. Pope, the plaintiff, and that plaintiff paid Cunningham Commission Co. for the corn and feed stuff in controversy, he cannot recover anything from the defendant, A. F. Drake." (Reporter.)

him, and no significance is to be attached to Pope paying the draft to the commission company. It was no concern of his who was to receive the money, so long as he got the goods he ordered. The draft was attached to the bill of lading. Each was a negotiable instrument, and may have been sold many times before reaching Pope, and his payment of the draft in order to obtain the title and possession of the goods ordered was a common business transaction, carrying in itself no change in the status of the parties originally contracting. It may have been a circumstance shedding light on which was the real contract between the parties, but these instructions ask nothing in that regard, and are not of themselves correct statements, and hence there was no error in refusing them.

The appellant elected to try the case on the truth of appellee's contention, and did not seek to have the theory of the brokerage contract and disclosed principal presented, and the finding of the jury against it is conclusive.

Judgment affirmed.