CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY
v. STILES.

Opinion delivered November 19, 1923.

1. RAILROADS—CARE AS TO STOCK ON TRACK.—A railroad must keep a lookout for live stock, and, after discovering them upon its right-of-way, must use ordinary care to avoid injuring them; and circumstances may exist which require the trainmen to stop the train, in the exercise of ordinary care, to prevent an injury.

2. RAILROADS—NEGLIGENCE—QUESTION FOR JURY.—In an action for injuries to live stock, from running them over a cattle guard at a crossing, evidence *held* to raise a question for the jury as to whether the trainmen exercised due care after discovering the stock on the right-of-way.

Appeal from Grant Circuit Court; *W. H. Evans,* Judge; affirmed.

*Thos. S. Buzbee, George B. Pugh* and *H. T. Harrison,* for appellant.

*D. D. Glover,* for appellee.

HUMPHREYS, J.  This suit was instituted by appellee against appellant, in the circuit court of Grant County, to recover damages in the sum of $825 to three mules and two horses, alleged to have been injured by the employees in charge of one of appellant's trains, in negligently and carelessly running said live stock over a cattle-guard at a road crossing north of Leola.

Appellant filed an answer denying the material allegations of the complaint.

The cause was submitted upon the pleadings, testimony adduced by the respective parties and the instruc-

tions of the court, which resulted in a verdict and consequent judgment in favor of appellee for $300, from which is this appeal.

Appellant contends for a reversal of the judgment upon the alleged ground that the evidence is insufficient to support the verdict, either upon the issue of negligence or injury.

The live stock had entered the right-of-way of appellant, which was fenced, by passing over the cattle-guard. The cattle-guard was at the public crossing north of Leola. There was a long deep cut north of the cattle-guard, then a high fill on north to Wilson's Creek. Wilson's Creek was about 400 yards north of the cattle-guard. The live stock came upon the dump near the creek, and were there observed by the employees of appellant on the southbound passenger train, who gave the usual alarm signal by blowing the whistle. The live stock ran at full speed down the dump, into the cut and across the cattle-guard, where, according to the testimony adduced by appellee, they were all severely injured by the sharp spikes on the cattle-guard, which pierced their feet to a considerable depth. The testimony on the part of appellees tended to show that, as a result from the injury, the feet and legs of the animals became sore and swollen to such an extent that they could scarcely walk around for several months, and that the market value of each was greatly reduced. Two of the witnesses testified to the difference in the market value of each, before and after the injury, which exceeded the amount of the verdict. Testimony is in sharp conflict as to whether the employees slowed down and stopped the train before reaching the cattle-guard. The employees testified that they not only slowed the train down but stopped it in the cut a considerable distance from the hindmost horse when he crossed the cattle-guard. One witness who testified for appellee said the train slowed down a little, but that it was only about thirty feet from the last horse that crossed the cattle-guard. The other

witness who testified for appellee, and who saw the train from the time it came in sight of the animals, said that the horses ran as fast as possible, and that the train made no appreciable check in its speed; that it was right on the horses when they ran across the cattle-guard.

The law is that the railroad company must keep a lookout for live stock, and, after discovering them upon its right-of-way, must use ordinary care to avoid injuring them. *Kansas City Sou. Ry. Co.* v. *Ingram,* 80 Ark. 269. Circumstances might exist which would require the employees of the railroad company to bring a running train to a complete stop, in the proper exercise of ordinary care, to prevent an injury. *Paragould Sou. Ry. Co.* v. *Crunk,* 81 Ark. 35.

If the jury believed the testimony introduced by appellee responsive to the issue of negligence, such facts made it the duty of the company to materially slow down the train, or stop it, in order to avoid the injury. According to appellee's testimony, the horses were chased as rapidly as they could go for 400 yards, upon a high dump and through a cut, over a cattle-guard. There was no escape for them until they reached the cattle-guard, where they were forced by fright to pass over it so rapidly they could not save their feet from injury. The jury may have reasonably inferred that, had the train slowed down sufficiently, or stopped, the animals would have slackened their pace and crossed the cattle-guard without serious injury. The facts in the instant case justified the submission of the issue to the jury of whether the trainmen, in the exercise of ordinary care, should have slowed down or stopped the train. *Railway Co.* v. *Ferguson,* 57 Ark. 16. There was substantial evidence to support the amount of the recovery.

No error appearing, the judgment is affirmed.